## Case No. 3,501.
### CURTIS v. CENTRAL RAILWAY.
#### [6 McLean, 401.] [1]

Circuit Court, D. Indiana. May Term, 1855.

PLEADING — DEPOSITIONS — ADOPTION OF STATE PRACTICE — CARRIERS OF PASSENGERS — NEGLIGENCE.

1. A special plea which amounts to the general issue is demurrable.

2. A plea which states facts in bar to the plaintiff's demand, is not good, if the facts so stated do not constitute a bar.

3. The law and practice of the state having been adopted in regard to the taking of depositions, a subsequent modification of the law, which was followed for a long time, will be considered as adopted by usage.

4. But the law of the state can make no change in the act of congress, as to the circumstances under which depositions may be taken. The person whose deposition is taken, under the act of congress, must reside more than a hundred miles from the place of holding the court.

[Cited in Warren v. Younger, 18 Fed. 861.]

5. A conductor of a train of cars is engaged in an important business, and is bound to use reasonable care for the safety of passengers. And at cross roads, or where the tracks lie very near each other, a more than ordinary degree of care is requisite.

6. Any carelessness in loading a freight train of cars, or in not attending to the adjustment of the load of lumber, by which an injury is done to a passenger in another train, will make the owners of the freight train responsible.

Morrison, Ray & Morrison, for plaintiff.
Newman & Test, for defendant.

INSTRUCTIONS OF THE COURT TO THE JURY. This case is brought to recover damages against the defendant, for an injury done to the plaintiff [E. M. Curtis], through the carelessness of the agents of the defendant, by which the plaintiff was injured while traveling in the cars of another line of railroad. The declaration alleges that the plaintiff was a passenger on the train of cars running eastward, towards the state line of Indiana and Ohio, and the defendant's train running westward, on a track parallel to that on which the plaintiff was a passenger, and within five feet six inches of the track on which the eastern cars were running; the western cars being freighted

[1] [Reported by Hon. John McLean, Circuit Justice.]

with cross ties and other materials of lumber, which were so negligently loaded by the servants of the defendant, that in passing the eastern train, the projecting end of a cross.tie or piece of timber, being loaded as aforesaid, struck the left arm of the plaintiff below the elbow, as the arm rested on the sill of the window of the car in which the plaintiff was a passenger, and with great violence and force thereby cut, lacerated, bruised and wounded the said left arm, &c. The defendant pleaded in bar to the action, that the injury was received through the carelessness of the plaintiff, by resting her elbow and arm on the sill of the car window, by which she exposed her arm to danger and injury, &c. Several other special pleas were filed, to which the plaintiff demurred. These pleas were disposed of on the ground that they amounted to the general issue, or did not state a complete answer to the declaration, admitting the facts stated to be true. In some of the pleas there was an averment of carelessness by the plaintiff, but no denial of the careless loading of the lumber so as to project over the side of the car, as alleged in the declaration, by reason of which the injury was done. The demurrer filed authorized the defendant to test the sufficiency of the declaration, and it was alleged to be defective in not showing any connection between the cars on which the plaintiff was a passenger and those which were owned by the defendant; but this objection was overruled by the court. The fact of the tracks of those two roads being near each other, imposed the greater diligence on the agents of both companies.

Exceptions were taken to several depositions, as not having been duly taken. By a rule of court, depositions were admitted to be taken under the state law, and in pursuance of the state practice. The first exception alleged, that notice of taking depositions was served on the treasurer of the railroad company, and not on the president. It was proved that this notice was served on the treasurer in the absence of the president. This is a sufficient service of the notice under the revised acts of 1852. Volume 2, p. 35. The state law has been somewhat changed in regard to taking depositions, since the above rule of court was adopted, but it seems that the state law as altered was followed by the uniform practice in this court, and this was held by the court as a usage in practice which would be sustained. It was objected to depositions taken before the mayor of Columbus, Ohio, who did not certify that the parties were or were not present. The mayor certified that the defendant was not present, and this, we think, is sufficient. To the deposition of Churchman and wife, it was objected that they reside in Indiana, and it nowhere appears that they live more than one hundred miles from the place of holding the court. This is a fatal objection. In adopting the state practice the court did not dispense with the requirement of the act of congress, which authorizes depositions to be taken where the witness lives more than one hundred miles from the place where the case is to be tried. The adoption of the state law only referred to the form and mode of taking depositions. The injury was proved, substantially as alleged in the declaration. A short distance after leaving Richmond, the two tracks were laid five feet six inches only apart, and this was continued for a considerable distance. When the passenger cars came to this part of the road, the freight cars had stopped on the eastern part of it, and moved slowly forwards as they were approached by the passenger cars. A stick of timber, called a tie, for the road, was proved to have projected some six inches or more over the other loading of the freight cars, and this timber struck the passenger cars two or three times, broke off a part of the moulding of the car window where the plaintiff was sitting, and severely injured her left arm. Under the injury, she at first fainted, but when she came to, she thought herself fortunate in not being more injured. Every possible attention was paid to her by the conductor and others. There were differences among the witnesses as to the position of the arm of the plaintiff. Some of them stated that her arm protruded two and a half inches over the side of the car; others who were near to her said her arm did not extend beyond the side of the car.

The court called the attention of the jury to the facts proved, and instructed them, if the injury was caused by the negligence of the defendant's agents, the plaintiff was entitled to recover. It was not enough that the freight cars should be shown to have been carefully loaded, but as the ties were thrown crosswise the open cars, it was the duty of the conductor of the freight cars to see that the timbers had not slipped from their places, so as to endanger the lives and limbs of the passengers on the train which they were to meet. That if they believe the arm of the plaintiff rested on the window sill where she sat, yet if her arm was not so extended as to endanger it in passing the tracks near to each other, under ordinary circumstances, the alleged carelessness is no excuse for the defendant. The conductor of a car performs a most responsible duty. The propelling force which he controls, with the train moved by it, increases in a wonderful degree the facilities of commercial intercourse and exchanges; but by its mighty power it crushes to death all living beings which it encounters. Hence the care, the vigilance, and the skill of the conductor must be in continual exercise to avoid collisions. In passing over a cross road, or over tracks near each other, his vigilance should be in proportion to the danger he encounters. That the tie which scraped the passenger car, and tore off some of its moulding at the window must have projected several feet beyond the side of the freight cars, is clear, from the fact that it struck the car

in which the plaintiff was sitting. In almost every car passengers were warned not to stand on the platforms between the cars, and this is done for the benefit of the passengers. Still the conductor of the cars is bound to exercise reasonable diligence. He is bound not to endanger his own passengers, or the passengers in other cars, by any carelessness or want of diligence on his part.

In the case before the jury, carelessness is shown, by the fact that the timber carried by the freight train struck, with force, the passenger car. This degree of carelessness is sufficient to charge the defendant. Had the freight train been properly laden, no one will pretend that the position of the plaintiff would have subjected her to injury. The circumstances of her admitting that she was in fault, after being told that her arm was on the window, will have but little weight with the jury. She was not in a position to judge of the facts, and therefore her admissions should be cautiously received. If the jury find from the evidence that the plaintiff was injured through the carelessness of the defendant's agents, either in loading the cars or in not keeping the load properly adjusted, she is entitled to recover what may be considered a reasonable compensation for the suffering she endured, the expenses for medical treatment, and otherwise, while she remained disabled. These are called compensatory damages. There is nothing in the case which would seem to authorize vindictive damages. No proof is given from which an intention to injure any one by the defendant's agents, can be presumed.

The jury found a verdict for $1,500.